IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION



UNITED STATES OF AMERICA,

v.                                                    CRIMINAL NO. 4:12cr106

THOMAS LAMONT LEGALL,

a/k/a Clarence Shamel Rahmeik Gatling

Defendant.

## OPINION AND ORDER

This matter comes before the Court upon Thomas Lamont Legall's ("Defendant") Motion to Suppress. ECF No. 17. For the reasons set forth herein, Defendant's Motion is **DENIED**.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 6, 2012, detectives of the Virginia Beach Police Department and Homeland Security Investigations received information suggesting the presence of illicit narcotics in Room 315 of the Country Inn & Suites ("Country Inn") located at 5808 Burton Station Road in Virginia Beach, Virginia. A Norfolk Police Department K-9 Drug-Detection Unit ("K-9 Unit"), consisting of Investigator W.T. Gibson ("Gibson") and dog, Dodger ("Dodger"), was called to the scene.

Gibson contacted the Country Inn's management upon his arrival and secured permission to "screen" the third floor for the presence or odor of narcotics with Dodger. Gibson and Dodger then proceeded up a stairwell that opened onto the third floor. Upon stepping onto the third floor Gibson "deployed" Dodger, a ritual that conveys to Dodger that it is time to begin screening for narcotics. Dodger was deployed at approximately 6:25 P.M. Upon deployment, Dodger began to screen doors along the left side of the third-floor hallway. Dodger passed three doors without

1

incident before reaching Room 315.

Dodger immediately "alerted" to the presence or odor of narcotics upon reaching Room 315, which in Dodger's case entails an aggressive response. Gibson explained at the suppression hearing, held on February 12, 2013, that Dodger is trained to use force to reach the source of any illicit narcotics he detects. In this case, Dodger immediately turned toward Room 315, brought his nose to the left side of the doorway, and tried to push his head through the door. Dodger then reached up with intent to scratch at the door. Upon seeing that Dodger intended to scratch the door, Gibson pulled him away so as to avoid alerting the room's occupants of their presence. At the February 12 hearing, Gibson testified that "[t]here was no doubt" Dodger's reaction to Room 315 was "an aggressive response to the odor of narcotics." After the alert, Gibson walked Dodger down the same stairwell and placed him in his vehicle. Gibson and another officer then left the scene to secure a search warrant.[1]

Detective H. Schafer ("Schafer") completed the Search Warrant Affidavit ("Affidavit"), which was admitted into evidence at the February 12 hearing. Aff., ECF No. 23-1. The Affidavit provides that Dodger screened doors on the third floor of the Country Inn and alerted "to the presence or odor of narcotics" in Room 315. Aff. 3, ECF No. 23-1. The Affidavit sought to establish probable cause based on: (1) Dodger's alert to Room 315; and (2) Schafer's training, experience, and knowledge. Aff. 3, ECF No. 23-1.

The Affidavit also sets forth Gibson and Dodger's training and certification record. Aff. 4, ECF No. 23-1. Gibson confirmed the accuracy of those records through his testimony at

---

[1] As the search warrant was being obtained, other officers monitoring Room 315 witnessed a "pizza-delivery girl" on the third floor of the Country Inn. The officers stopped her and learned that the pizza was to be delivered to Room 315. At law enforcement's request the pizza-delivery girl returned to the Country Inn's lobby. The officers then had Country Inn staff call up to Room 315 and explain that the pizza would need to be retrieved from the lobby. Shortly thereafter, officers witnessed the Defendant exit Room 315 and proceed toward the lobby. The officers took the Defendant into custody and he was detained until the search warrant was secured and executed. The Defendant has never challenged the legality of that detention.

2

the February 12 hearing. With respect to Gibson, the Affidavit provides:

> Inv WT Gibson has been recognized as an expert witness in the recognition, packaging and use of narcotics in Norfolk General District Courts and Norfolk Circuit Courts. Inv WT Gibson has completed over 625 hours of training in the field of K9 Narcotic Detector Dog training and graduated the Norfolk Police Narcotic Detector Dog Program on February 13, 2009. Inv WT Gibson also has certified with Norfolk Police K-9 "Dodger" through the standards set fourth [sic] by Virginia Police Work Dog Association. Inv WT Gibson has been involved in numerous investigations, search warrants, operations, and surveillances relating to narcotic offenses. This affiant has also conducted interviews with several narcotic dealers and users. Investigator Gibson has attended numerous narcotic related schools and training seminars sponsored by the Virginia Department of Criminal Justice Services, City of Norfolk, Drug Enforcement Administration, and Bureau of Alcohol Tobacco and Firearms.

Aff. 4, ECF No. 23-1. As for Dodger, the Affidavit provides:

> Canine "Dodger" has been working since October 17, 2008 and has completed over 625 hours training and graduated the Norfolk Police Narcotic Detector Dog Program on February 13, 2009. Canine "Dodger" is also certified in the detection of narcotics: Cocaine, Heroin, Methamphetamine, Marijuana and Ecstasy through the standards set fourth [sic] by Virginia Police Work Dog Association[.]

Aff. 4, ECF No. 23-1. The Court also learned at the February 12 hearing that Gibson and Dodger accumulated the majority of their 625 training hours while working together.

Based on the information set forth in the Affidavit, ECF No. 23-1, a Magistrate Judge of the Virginia Beach Circuit Court approved a Search Warrant ("Warrant"), ECF No. 23-2, for Room 315 of the Country Inn on November 6, 2012 at 7:54 P.M. The Warrant authorized law enforcement to search Room 315 for "Schedule I or II narcotics, Marijuana, packaging materials, books, ledgers, records, firearms, and any other documentation to record monies spent, monies owed, and other transactions related to the Possession of Schedule I or II narcotics, and Marijuana." Warrant 1, ECF No. 23-2.

Four minutes later, at 7:58 P.M., five officers executed the Warrant for Room 315. Detective John Belsha ("Belsha") of the Virginia Beach Police Department was one of the five

officers who executed the Warrant. Belsha testified at the February 12 hearing that he does not recall reviewing the Warrant prior to its execution.

Belsha further testified that upon entry the officers secured Room 315 to ensure that there were no threats. Belsha then proceeded to search the front part of the room. Inside the room sat a dresser of drawers located immediately to the left of, and two to three feet from, the doorway into Room 315. Belsha opened the top drawer and found a single item, a gift-wrapped package about twelve inches in length and weighing about two pounds. Belsha testified that he suspected the package contained a kilogram of narcotics based on its weight.[2] He then partially tore open the gift wrapping to view the package's contents, but found another layer of cellophane wrapping. Belsha testified that he had come across cocaine packaged in cellophane many times before. He then cut through the cellophane wrapping to expose a white powder. A field test was conducted, and the powder tested positive for cocaine.

On November 14, 2012, Defendant was charged in a two-count Criminal Indictment with: (1) conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Defendant filed the instant Motion to Suppress on December 13, 2012. ECF No. 17. The Government filed its Response on December 25, 2012. ECF No. 18. On February 12, 2013, the Court held a hearing concerning the Defendant's Motion to Suppress. Min. Entry, ECF No. 22.

## II. DEFENDANT'S MOTION TO SUPPRESS

Defendant sets forth five grounds for suppression of the cocaine recovered from Room 315 of the Country Inn. The Court will address each argument in Parts II(A)-(E) of this Opinion and Order.

---

[2] 1 kilogram converts to 2.20462 pounds.

4

A. USE OF A K-9 DRUG-DETECTION UNIT TO CONDUCT A "SNIFF TEST" IN THE COMMON AREAS OF A HOTEL, WHERE LAW ENFORCEMENT HAD PERMISSION TO BE, DOES NOT CONSTITUTE A FOURTH AMENDMENT "SEARCH"

Defendant does not contest law enforcement's authority to be present in the common areas of the Country Inn. Rather, Defendant argues that law enforcement's utilization of a K-9 Unit to conduct a sniff test from the third-floor hallway of the Country Inn violated his reasonable expectation of privacy in the contents of Room 315.

1. **Standard of Review**

Defendant's argument principally relies on the Supreme Court's decision in Kyllo v. United States, 533 U.S. 27 (2001).[3] In Kyllo, law enforcement suspected that the defendant was growing marijuana within his residence. To confirm their suspicions, officers sat in a car parked on a public street and scanned the defendant's residence using a thermal-imaging device. Id. at 29-30. The device "detect[s] infrared radiation, which virtually all objects emit but which is not visible to the naked eye." Id. at 29.

The thermal-imaging scan showed that the roof of the garage and side wall of the residence was relatively hot, which is consistent with the use of high-intensity lamps common to indoor marijuana cultivation. Based on the thermal-imaging scan, informant tips, and utility bills, a Federal Magistrate Judge approved a search warrant for the defendant's residence. Inside the defendant's residence, law enforcement found a growing operation involving more than 100 marijuana plants. Id. at 29-30.

---

[3] Defendant also cites the Florida Supreme Court's decision in Florida v. Jardines, 73 S. 3d 34 (Fla. 2011), cert. granted 132 S. Ct. 995 (2012). In Jardines, the Florida Supreme Court held that a "sniff test" at the front door of a private residence constitutes a Fourth Amendment "search" because persons have a reasonable expectation of privacy in the "air and content of the air" that escapes to the curtilage. Id. at 58-59. However, the court limited its holding to private residences, having acknowledged that "[a] hallway outside a college dormitory . . . may not contain the same expectation of privacy as the front door and living room of a private home." Id. at 58.

By that example, it appears that the Florida Supreme Court sought to draw a distinction between the air which escapes into a home's curtilage and that which escapes into the common areas of a multi-unit dwelling. The Country Inn is a multi-unit dwelling and the hallway from which Dodger screened Room 315 is a common area. Therefore, even if Jardines were binding precedent, the Court would decline to grant Defendant's Motion because he had no reasonable expectation of privacy in the air that escaped into the County Inn's third-floor hallway.

5

The defendant in Kyllo unsuccessfully moved to suppress the evidence seized from his home and then conditionally pled guilty to one count of manufacturing marijuana. Id. at 30. On appeal, the Supreme Court was asked to determine "whether the use of a thermal-imaging device aimed at a private home from a public street to detect relative amounts of heat within the home constitutes a 'search' within the meaning of the Fourth Amendment." Id. at 29. Five justices held that the use of sense-enhancing technology to obtain "any information regarding the interior of the home that could not otherwise have been obtained without physical 'intrusion into a constitutionally protected area,' constitutes a search—at least where . . . the technology in question is not in general public use." Kyllo, 533 U.S. at 34 (emphasis added) (citation omitted) (quoting Silverman v. United States, 365 U.S. 505, 512 (1961)).

Four years later, however, the Supreme Court set forth an important qualification to its holding in Kyllo. In Illinois v. Caballes, law enforcement stopped a defendant for speeding on an interstate highway. 543 U.S. 405 (2005). A K-9 Unit arrived shortly thereafter and screened the defendant's vehicle while the officer who initiated the stop wrote a ticket. The K-9 Unit alerted to the defendant's trunk and, based on that alert, the officers searched the truck and found marijuana. Id. at 406. The defendant in Caballes unsuccessfully moved to suppress the evidence seized from his trunk and was subsequently convicted of a narcotics offense. Id. at 407.

On appeal, the Supreme Court considered "[w]hether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop." Id. The Court held that it did not.

In reaching that conclusion, the Court explained that "[o]fficial conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." Id. at 408 (quoting United States v. Jacobsen, 466 U.S. 109, 123 (1984)).

Therefore, "any interest in possessing contraband cannot be deemed 'legitimate,' and . . . governmental conduct that only reveals the possession of contraband 'compromises no legitimate privacy interest.'" Id. (quoting Jacobsen, 466 U.S. at 123). "This is because the expectation 'that certain facts will not come to the attention of the authorities' is not the same as an interest in 'privacy that society is prepared to consider reasonable.'" Caballes, 543 U.S. at 408-09 (quoting Jacobsen, 466 U.S. at 122). By example, the Court cited United States v. Place, 462 U.S. 696 (1983), where it "treated a canine sniff by a well-trained narcotics-detection dog as 'sui generis' because it 'discloses only the presence or absence of narcotics, a contraband item,'" Caballes, 543 U.S. at 409 (quoting Place, 462 U.S. at 707).

Accordingly, the Court held that "the use of a well-trained narcotics-detection dog—one that 'does not expose noncontraband items that otherwise would remain hidden from public view,' during a lawful traffic stop, generally does not implicate legitimate privacy interests." Id. at 409 (quoting Place, 462 U.S. at 707). In so holding, the Court emphasized that its decision in Caballes "is entirely consistent with" Kyllo. Kyllo concerned sense-enhancing technology which allowed law enforcement to detect lawful activity—e.g., intimate details in a home—for which there is a legitimate expectation of privacy. Caballes, on the other hand, concerned sense-enhancing technology which only allowed law enforcement to detect contraband—e.g., narcotics—for which there is no legitimate expectation of privacy. Id. 409-10.

Since Caballes was handed down, other circuits have extended its holding and found that no reasonable expectation of privacy is violated where law enforcement utilizes a K-9 Unit, which only conveys the presence of contraband, to screen fixed premises from the common areas of multi-unit dwellings. See United States v. Scott, 610 F.3d 1009, 1016 (8th Cir. 2010) (citing Caballes in holding that a dog sniff of an "apartment door frame from a common hallway did not

7

constitute a search subject to the Fourth Amendment"), cert. denied 131 S. Ct. 964 (2011); United States v. Brock, 417 F.3d 692, 695 (7th Cir. 2005) (citing Caballes in holding that a dog sniff of a defendant's bedroom from the hallway of a multi-unit dwelling, where other residents consented to law enforcement's presence, did not constitute a Fourth Amendment search).

2. **Discussion**

Defendant's argument proceeds as follows. First, Defendant claims that, like the private residence in Kyllo, he had a reasonable expectation of privacy in the contents of his hotel room. Def.'s Mot. to Supp. 3, ECF No. 17.[4] Second, Defendant likens a K-9 Unit's "sniff test" to the thermal-imaging device in Kyllo, suggesting that Dodger constitutes sense-enhancing technology, not in general public use, which law enforcement deployed to obtain information about the interior of Room 315 that it could not otherwise obtain without physically intruding on a constitutionally protected area. Therefore, Defendant insists that Dodger's screening of Room 315 for the "presence or odor of narcotics," Aff. 3, ECF No. 23-1, constituted a Fourth Amendment "search" which must be supported by probable cause, see Def.'s Mot. to Supp. 6, ECF No. 17.

In light of the Court's ruling in Caballes, however, any intrusion upon the Defendant's privacy expectations does not amount to a constitutionally cognizable infringement.

---

[4] Defendant cites the Fourth Circuit's decision in United States v. Bullard as support for the proposition that he had a reasonable expectation of privacy in Room 315. 645 F.3d 237, 243 (4th Cir.), cert. denied 132 S. Ct. 356 (2011). Bullard concerned whether an unregistered hotel guest has a reasonable expectation of privacy in his hotel room. The Circuit Court expressly declined to rule on the issue, finding that law enforcement had not engaged in a Fourth Amendment search on other grounds. Id.

The Fourth Circuit has, however, acknowledged that "[a] guest in a hotel room has a reasonable expectation of privacy." United States v. Kitchens, 114 F.3d 29, 31 (4th Cir. 1997) (citing Stoner v. California, 376 U.S. 483, 490 (1964)). The Arrest Warrant Affidavit suggests that Room 315 was registered to the Defendant's alias, Clarence Gatling. Arrest Aff. 1, ECF No. 2. But, neither party presented evidence or argument concerning whether the Defendant was a registered guest at the Country Inn. Therefore, the Court will, without so finding, presume that the Defendant was a registered guest for purposes of considering his Motion to Suppress. ECF No. 17.

8

First, Defendant is mistaken in likening Dodger to the thermal-imaging technology in Kyllo. The Affidavit provides that Dodger is "certified in the detection of narcotics: Cocaine, Heroin, Methamphetamine, Marijuana and Ecstasy." Aff. 4, ECF No. 23-1. It also provides that Dodger "alerted . . . to the presence or odor of narcotics" in Room 315. Aff. 3, ECF No. 23-1. Finally, at the February 12 hearing, Gibson testified that Dodger's alert—an aggressive response—conveys the presence or odor of narcotics. Based on these facts, the Court finds that Dodger is a well-trained K-9 Unit whose alert does not convey the presence of non-contraband items. See Caballes, 543 U.S. at 409 (citing Place, 462 U.S. at 707) (describing a "well-trained narcotics-detection dog" as one that "does not expose noncontraband items that otherwise would remain hidden from public view").

Second, Defendant is mistaken in claiming that he has a reasonable expectation of privacy in the contents of his hotel room, as no such expectation existed with respect to any contraband therein. Caballes, 543 U.S. at 408 (citing Jacobson, 466 U.S. at 123). As such, he had no reasonable expectation of privacy in the cocaine which served as the basis for Dodger's alert.

For the reasons set forth in this Section, the Court finds that Dodger's screen of Room 315 does not constitute a Fourth Amendment "search" because: (1) Dodger is a well-trained K-9 Unit whose alert does not convey the presence of non-contraband items; and (2) Dodger's screen of Room 315 did not compromise any legitimate privacy interest, because it only revealed the presence or odor of contraband—i.e., the cocaine inside the gift-wrapped package.

### B. AN ALERT FROM A K-9 DRUG-DETECTION UNIT, ABSENT ADDITIONAL CORROBORATING EVIDENCE, PROVIDES ADEQUATE PROBABLE CAUSE TO SUPPORT ISSUANCE OF A SEARCH WARRANT

Defendant argues that "a simple 'alert' from a drug dog without additional corroboration, does not give rise to probable cause to issue a search warrant." Def.'s Mot. to Supp. 7, ECF No.

17. According to the Defendant, this is "because dogs are not infallible and many recent studies have cast doubt upon the reliability of narcotics detection by dogs." Def.'s Mot. to Supp. 7, ECF No. 17. The Defendant cites neither case law nor studies in advancing this argument.

### 1. Standard of Review

The Fourth Circuit has acknowledged that an alert by a well-trained K-9 Unit provides adequate probable cause to support issuance of a search warrant. United States v. Koon Chung Wu, 217 F. App'x 240, 245 (4th Cir. 2007) (per curiam) (unpublished opinion) (stating that "[t]he detection of narcotics by a trained dog is generally sufficient to establish probable cause" so long as there some indicia of reliability for the alert—e.g., evidence of the drug-dog's training and certification). Eight other circuit courts have adopted a similar position.[5]

### 2. Discussion

The Affidavit provides that Dodger screened doors on the third floor of the Country Inn and alerted to Room 315 for the presence or odor of narcotics. Aff. 4, ECF No. 23-1. The Court finds that Dodger's alert provided adequate probable cause to support issuance of the Warrant for Room 315.

---

[5] See United States v. Stubblefield, 682 F.3d 502, 507 (6th Cir. 2012) ("An alert by a properly trained and reliable drug-detection dog 'is sufficient to establish probable cause for the presence of a controlled substance.'" (quoting United States v. Diaz, 25 F.3d 392, 394 (6th Cir. 1994))); United States v. Smith, 448 F. App'x 936, 939 (11th Cir. 2011) (unpublished opinion) (stating that a trained dog's "positive alert would be sufficient to establish a 'fair probability' that drugs would be found in the car" (citing United States v. Tamari, 454 F.3d 1259, 1265 (11th Cir. 2006))); United States v. Donnelly, 475 F.3d 946, 955 (8th Cir. 2007) ("Assuming that the dog is reliable, a dog sniff resulting in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs present."); United States v. McCaney, 177 F. App'x 704, 707 (9th Cir. 2006) (unpublished opinion) ("A canine sniff alone can supply the probable cause necessary for issuing a search warrant if the application for the warrant establishes the dog's reliability." (quoting United States v. Lingenfelter, 997 F.2d 632, 639 (9th Cir. 1993))); United States v. Hernandez, 24 F. App'x 560, 562 (7th Cir. 2001) (unpublished opinion) ("A dog's alert alone supplies probable cause that drugs are present."); Resendiz v. Miller, 203 F.3d 902, 903 (5th Cir. 2000) ("A drug-sniffing canine alert is sufficient, standing alone, to support probable cause for a search." (citing United States v. Williams, 69 F.3d 27, 28 (5th Cir. 1995))); cf. United States v. Romero, 156 F.3d 1245 (10th Cir. 1998) ("[T]he rule that the alert of a drug-sniffing dog is sufficient to establish probable cause to arrest could not be more clear or precise. A dog alert alone establishes probable cause to arrest."); United States v. Navedo-Colon, 996 F.2d 1337, 1339 (1st Cir. 1993) (stating in dicta that a "dog sniff alone provided . . . sufficient grounds for obtaining a search warrant").

### C. THE RELIABILITY OF A K-9 DRUG-DETECTION UNIT'S ALERT MAY BE ESTABLISHED THROUGH RECITATION OF THE K-9 UNIT'S TRAINING AND CERTIFICATION RECORD

Defendant argues that the Magistrate Judge who issued the warrant for Room 315 could not assess Dodger's reliability because "the K-9 unit's 'resume' in the affidavit attached to the search warrant makes no mention of 'Dodger' or Investigator W.T. Gibson's false alerts or failures." Def.'s Mot. to Supp. 7, ECF No. 17. Once again, Defendant cites no case law in support of this argument.

#### 1. Standard of Review

As set forth in Part II(B)(1) of this Opinion and Order, circuit courts have consistently found that a well-trained K-9 Unit's alert is sufficient to establish probable cause so long as there is some indicia of the alert's reliability. Koon Chung Wu, a recent unpublished opinion by the Fourth Circuit, addressed the question of what is required to establish that indicia of reliability when a K-9 Unit's alert serves as the basis for probable cause. 217 Fed. App'x. at 240.

In Koon Chung Wu, law enforcement received a tip that a package at a United Parcel Service ("UPS") distribution center contained controlled substances. Law enforcement located the package and placed it in three separate "line-ups" with other packages not known to contain controlled substances. Id. A K-9 Unit named "Cody" was then used to screen each line-up. Each time Cody alerted to the presence of a controlled substance in the suspect package. On the basis of Cody's positive alerts, a Detective applied for and obtained a warrant to search the package. The affidavit provided, amongst other things, Cody's training and certification record. Id. at 241. A search of the package uncovered stolen merchandise but no narcotics. Id. at 242.

Approximately one month later, law enforcement received information about two more suspicious packages at the UPS facility. Cody was again brought to the facility and alerted to the odor of a controlled substance in one of the packages. Based on the tip and Cody's alert, law

11

enforcement applied for and obtained a warrant to search both packages. The second affidavit set forth the same information about Cody's training and certification record as was included in the first affidavit. The package was searched and, once again, law enforcement found stolen merchandise but no controlled substances. Id. at 242.

After further investigation of the stolen merchandise, two defendants were indicted for the unauthorized and fraudulent use of credit cards. Id. at 243. One defendant filed a motion to suppress which was denied by the district court. Upon denial of his motion the defendant entered a conditional plea of guilty, preserving only his right to appeal the district court's denial of the suppression motion. Koon Chung Wu, 217 Fed. App'x. at 244.

On appeal, the defendant in Koon Chung Wu argued that the officers lacked probable cause to search the packages at the UPS facility because neither affidavit demonstrated Cody's reliability as a drug-detection dog. Id. 243-44. The Fourth Circuit rejected that argument and, looking to sister circuits, held that "a positive alert by a drug dog is sufficient on its face to establish probable cause if the affidavit supporting the warrant states that the dog is trained and certified to detect controlled substances." Id. at 245 (citing United States v. Kennedy, 131 F.3d 1371, 1376-77 (10th Cir. 1997), cert. denied 525 U.S. 863 (1998)); United States v. Berry, 90 F.3d 148, 153 (6th Cir. 1996); United States v. Klein, 626 F.2d 22, 27 (7th Cir. 1980)).

The affidavits in Koon Chung Wu satisfied that standard because they provided: (1) accounts of Cody's positive alerts to the packages; and (2) details concerning Cody's training and certification as a drug-detection dog, including mention that he and his handler had completed 240 hours of instruction and a re-certification session. Id. Thus, the Fourth Circuit found that "evidence of Cody's training and certification was enough by itself to establish

Cody's reliability so that his positive alerts for controlled substances established probable cause" for both searches. Id.

2. **Discussion**

The Court finds that the information set forth in the Affidavit provided sufficient indicia of Dodger's reliability to permit issuance of the Warrant for Room 315. See Aff. 3-4, ECF No. 23-1.

First, the Affidavit provides that Dodger screened doors on the third floor of the Country Inn and alerted "to the presence or odor of narcotics" in Room 315. Aff. 3, ECF No. 23-1.

Second, the Affidavit states that Gibson: (1) "has completed over 625 hours of training in the field of K9 Narcotic Detector Dog training"; (2) "graduated from the Norfolk Police Narcotic Detector Dog Program on February 13, 2009"; and (3) is "certified with Norfolk Police K-9 'Dodger' through the standards set fourth [sic] by the Virginia Police Work Dog Association." Aff. 4, ECF No. 23-1.

Third, the Affidavit states that Dodger: (1) "has been working since October 17, 2008 and has completed over 625 hours [of] training"; (2) "graduated [from] the Norfolk Police Narcotic Detector Dog Program on February 13, 2009"; and (3) is "certified in the detection of narcotics: Cocaine, Heroin, Methamphetamine, Marijuana and Ecstasy through the standards set fourth [sic] by the Virginia Police Work Dog Association." Aff. 4, ECF No. 23-1.

Finally, the Court learned at the February 12 hearing that Gibson and Dodger accumulated the majority of their respective 625 training hours while working together.

D. **A WARRANT THAT AUTHORIZES LAW ENFORCEMENT TO SEARCH A FIXED PREMISES PROVIDES AUTHORITY TO OPEN CLOSETS, CHESTS, DRAWERS, AND CONTAINERS WHEREVER ITEMS LISTED IN THE WARRANT MAY BE FOUND**

Defendant argues that the search warrant did not authorize law enforcement to open the gift-wrapped package in which the cocaine was found.

1.  **Standard of Review**

In United States v. Ross, the Supreme Court set forth the principle that "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." 456 U.S. 798, 820-21 (1982) (plurality opinion). By example, the majority opinion in Ross states that "a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found." Id. at 821 (emphasis added).

By its facts, the holding in Ross was necessarily limited to the context of vehicle searches. See id. at 826 (Powell, J. concurring) (joining the opinion because "it is essential to have a Court opinion in automobile search cases that provides 'specific guidance to police and courts in this recurring situation.'" (quoting Robbins v. California, 453 U.S. 420, 453 (1981) (Powell, J., concurring))). But, circuits have regularly cited Ross in applying that principle to facts involving the search of fixed premises.[6]

---

[6] See United States v. Whisnant, 391 F. App'x 426, 427 (6th Cir.) (unpublished opinion) (citing Ross and finding that law enforcement's cutting holes in the walls of defendant's home, which resulted in the discovery of a firearm, did not exceed the scope of a warrant which authorized a search of the "entire premises"), cert. denied 131 S. Ct. 586 (2010); United States v. Smith, 363 F. App'x 629, 632 (10th Cir. 2010) (unpublished opinion) (citing Ross and affirming District Court's refusal to suppress evidence recovered from a locked gun safe within the residential area of defendant's building); United States v. Lengen, 245 F. App'x 426, 434 (6th Cir. 2007) (unpublished opinion) (citing Ross and finding that law enforcement's opening of a locked safe found in the defendant's bedroom closet, where the warrant authorized a search of the defendant's dwelling, did not require a separate warrant because "judicial authorization to search a home for contraband drugs, money associated with drug trafficking, and drug paraphernalia would clearly justify the opening of doors, closets, drawers, safes, and other places where the listed items could be hidden"), cert. denied 552 U.S. 1305 (2008); United States v. Hughes, 940 F.2d 1125, 1127 (8th Cir.) (citing Ross and finding that law enforcement's search under a bed and inside a coat pocket, which resulted in the discovery of a firearm and cocaine, was proper because the warrant authorized a search of premises for a necklace, and the necklace could have been concealed in either location searched), cert. denied 502 U.S. 896 (1991); United States v. Giannetta, 909 F.2d 571, 577 (1st Cir. 1990) (citing Ross and finding that law enforcement, who conducted a search with reasonable suspicion of finding evidence of automobile insurance fraud, could search anywhere it reasonably believed such evidence would be found, including within "pockets in clothing, boxes, file cabinets and files"); cf. United States v. Armstrong, 138 F. App'x 953, 955 (9th Cir. 2005) (unpublished opinion) (citing Ross and finding that a search warrant for the defendant's home extended to the basement, which was not accessible from within the home and had a separate entrance, because a "lawful search extends to the entire area in which an object of the search may be found and is not limited by the possibility that separate acts of entry or

For instance, in United States v. Rios, law enforcement confronted a defendant at his hotel room in response to a call about suspicious activity involving narcotics. 443 Fed. App'x. 433, 435-36 (11th Cir. 2011) (per curiam) (unpublished opinion). The defendant initially consented to law enforcement's search of the hotel room. During that phase of the search the officers found items consistent with drug use and distribution. They also found a locked safe inside the room. The officers requested permission to forcibly open the safe, but the defendant refused. The officers then sought and obtained a warrant to search the defendant's <u>hotel room</u> for, amongst other things, controlled substances and firearms. With the warrant in hand, the officers returned to the hotel room and used a screwdriver to pry open the safe. Inside they found multiple baggies of methamphetamine and a loaded firearm. Id. at 436. The defendant's suppression motion was denied, and he was convicted of a narcotics and firearm offense.

On appeal, the Defendant argued, amongst other things, that "the search warrant was overbroad and in violation of the Fourth Amendment's Particularity Clause." Id. at 435. The Eleventh Circuit rejected that argument, stating that a "warrant to search a specific area for a certain class of things authorizes government agents to break open locked containers which may contain the objects of the search." Id. at 437 (internal quotation marks omitted) (quoting United States v. Jackson, 120 F.3d 1226, 1228-29 (11th Cir. 1997)). Therefore, because it "was a 'lawful search of fixed premises' for controlled substances and firearms, the officers had authority to open the locked safe." Id. at 439 (citing Ross, 456 U.S. at 820-21).

---

opening may be required to complete the search").

## 2. Discussion

The Court finds that the search warrant in this case authorized law enforcement to open the drawer and gift-wrapped package in which the cocaine was concealed. First, the search warrant sufficiently describes the place to be searched, having provided the address, room number, and floor on which the room is located. Second, the Warrant set forth items subject to seizure, including Schedule I or II narcotics and Marijuana. Therefore, law enforcement was authorized to search Room 315 wherever those controlled substances might reasonably be believed to be found. It was perfectly reasonable for law enforcement to suspect that the Defendant concealed the drugs to which Dodger had earlier alerted within the gift-wrapped package found inside the dresser drawer.

### E. LAW ENFORCEMENT ACTED WITH PROBABLE CAUSE WHEN SEARCHING THE GIFT-WRAPPED PACKAGE FOR CONTROLLED SUBSTANCES

Finally, Defendant argues that "the gift-wrapped package . . . was searched without probable cause." Def.'s Mot. to Supp. 8, ECF No. 17. According to Defendant, because "[l]aw enforcement failed to present probable cause to a detached magistrate to obtain a search warrant for the gift-wrapped package . . . they took it upon themselves to conduct a presumptively unreasonable search." Def.'s Mot. to Supp. 8, ECF No. 17.

The Court will not engage in a lengthy discussion of this argument. The Court found, in Parts II(A)-(D) of this Opinion and Order, that the officers opened the drawer and gift-wrapped package pursuant to a validly issued search warrant. Warrant, ECF No. 23-2. Therefore, law enforcement acted with probable cause when they opened the gift-wrapped package.

## III. CONCLUSION

For the reasons set forth herein the Court **DENIES** Defendant's Motion to Suppress. ECF No. 17. The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
February 15, 2013